UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE CALIFORNIA WINERY WORKERS PENSION TRUST FUND,<br><br>Plaintiff<br><br>v.<br><br>GIUMARRA VINEYARDS CORP., et al.,<br><br>Defendant | CASE NO. 1:17-CV-0364 AWI SAB<br><br>ORDER ON PLAINTIFF'S MOTION TO STRIKE<br><br>(Doc. No. 16) |

Plaintiff the Board of Trustees of the California Winery Workers Pension Trust Fund ("The Board") brings this Employee Retirement Income Security Act ("ERISA") action to collect outstanding withdrawal liability against Giumarra Vineyards Corp. and numerous related entities (collectively "Giumarra"). Currently before the Court is The Board's motion to strike Giumarra's request for jury trial in its amended answer. For the reasons that follow, the motion will be granted.

## **GENERAL BACKGROUND**

From the First Amended Complaint ("FAC"), Giumarra was a participating employer in the California Winery Workers Pension Trust Fund ("The Fund"), a multi-employer pension plan that is managed by a joint Board of Trustees comprised of participating union members and member of the Winery Employers' Association. However, on June 1, 2008, Giumarra withdrew

from the Fund and was assessed withdrawal liability. On September 22, 2008, Giumarra was notified that the total amount of its liability was calculated at approximately $16 million in 2008, the annual payment was calculated to be $19,721.00, and Giumarra was given the option of making quarterly payments of $4,930.25. The first payment was due 60 days from receipt of the September 22, 2008 letter. Giumarra did not make its quarterly payments.

On February 3, 2009, The Board informed Giumarra of the failure to make withdrawal payments.

On March 9, 2009, Giumarra made its first withdrawal payment, plus interest. The next day, The Board mailed a letter to Giumarra that set a quarterly payment schedule. The letter also informed Giumarra that no further invoices would be sent and that a default "will result in full amount becoming due." Giumarra began making the appropriate quarterly payments.

On January 28, 2010, The Board determined that the Fund's unfunded vested liability was approximately $132 million, and a reallocation of this liability between the employers was necessary. As a result, Giumarra's withdrawal liability rose to approximately $34 million. Nevertheless, per statute, Giumarra's quarterly payments of $4,930.25 did not change.

The Fund did not receive Giumarra's quarterly payment on March 9, 2011.

On March 14, 2011, the Fund notified Giumarra that the quarterly payment had not been made, and that "any failure to make a withdrawal liability payment when due will result in a default under the statute, if the failure is not cured within 60 days after the employer receives written notification . . . . This letter serves as written notification . . . ." The letter informed Giumarra that the failure to make the quarterly payment in 60 days would result in default and that The Fund could accelerate all withdrawal liability.

After June 7, 2011, The Fund sent Giumarra's attorney a letter that stated the 60 day period to pay had lapsed. The Fund explained that Giumarra was in default and demanded full payment of the outstanding $34 million withdrawal liability.

Giumarra maintains that it never received the March 14 letter and that its failure to timely make the March 9, 2011 payment was due to a technological glitch. Giumarra has since made the late March 9, 2011 quarterly payment.

On May 9, 2017, the Fund filed this lawsuit. The Fund seeks "to collect the outstanding withdrawal liability owed to [it] by [Giumarra]." FAC at 1:24. The Fund alleges violations of 29 U.S.C. § 1399(c). Through 29 U.S.C. §§ 1451 and 1132(g)(2), The Fund seeks: (1) the entire amount of outstanding withdrawal liability; (2) interest on the amount of outstanding withdrawal liability; (3) liquidated damages in an amount equal to the greater of (a) interest on the unpaid contributions or (b) 20% of the total amount of unpaid contributions; (4) attorney's fees and costs; and (5) any other legal or equitable relief that the court deems appropriate.

*Plaintiff's Arguments*

The Board argues that the Seventh Amendment protects a right to a jury trial in cases involving legal rights and remedies, not equitable rights and remedies. In *Spinelli v. Gaughan*, 12 F.3d 853 (9th Cir. 1993), the Ninth Circuit determined that ERISA provides only equitable relief, and in *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1985), the Ninth Circuit determined there is no right to a jury trial in an ERISA action. Despite this authority, Giumarra demands a jury trial in its answer and provides no factual or legal basis for that request. Moreover, the relief sought in the Complaint is under 29 U.S.C. § 1132(a), 29 U.S.C. § 1451(b), and 29 U.S.C. § 1301(b), which embody equitable relief.

*Defendant's Opposition*

Giumarra argues that it is entitled to a jury trial because the First Amended Complaint ("FAC") seeks legal remedies. First, the FAC cites to 29 U.S.C. §§ 1132(g)(2) and 1451, and those sections explicitly authorize a plaintiff to seek "other legal relief." Second, the FAC seeks to recover damages in accordance with ERISA, including withdrawal liability and accrued interest, attorney's fees and costs, and any other legal relief that the court deems appropriate. The nature of The Board's claims are analogous to breach of contract or tort claims because the claims depend on a breach of duty and damages. Also, the damages requested are legal in nature because The Board seeks damages and liquidated damages, and the liquidated damages are punitive.

*Discussion*

The Seventh Amendment secures the right to a jury trial for "suits in which legal rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are

recognized, and equitable remedies are administered." Chauffeurs, Local 391 v. Terry, 494 U.S. 558, 564 (1990); Teutscher v. Woodson, 835 F.3d 936, 943 (9th Cir. 2016). The Seventh Amendment right to a jury trial may apply to actions enforcing statutory rights "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." Curtis v. Loether, 415 U.S. 189, 194 (1974); Tamosaitis v. URS Inc., 781 F.3d 468, 485 (9th Cir. 2015).

In this case, the FAC identifies three relevant provisions of ERISA: § 1132(g)(2), § 1399, and § 1451. Section 1399 deals with a plan's determination of an employer's "withdrawal liability," and § 1399(c)(5) permits a plan to accelerate the entire amount of withdrawal liability due if the employer does not make timely periodic withdrawal liability payments. 29 U.S.C. § 1399(c); Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 196-98 (1997); Resilient Floor Covering Pension Fund v. M&M Installation, Inc., 630 F.3d 848, 856 (9th Cir. 2010). Section 1451(a) permits plan fiduciaries to maintain court actions for withdrawal liability. See Bay Area Laundry, 522 U.S. at 197-98. Section 1451(b) provides that an employer's failure to make timely withdrawal liability payments are to be treated as a "delinquency" under 29 U.S.C. § 1145,[1] see 29 U.S.C. § 1451(b); Trustees of Amalgamated Ins. Fund v. Geltman Industries, Inc., 784 F.2d 926, 932 (9th Cir. 1986). Section 1132(g)(2) provides a remedy for violations of § 1145. Sullivan v. Cox, 78 F.3d 322, 324 (7th Cir. 1996). Section 1132(g)(2) provides that a plan fiduciary may recover the following relief: "(A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of-- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A); (D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and (E) such other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2); Northwest Administrators, Inc. v. Albertson, Inc., 104 F.3d 253, 257 (9th Cir. 1996). The effect of these

---

[1] 29 U.S.C. § 1145 reads: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

4

statutes on this case is that The Board is pursuing a lawsuit under §§ 1451(a) and (b) for Giumarra's failure to pay withdrawal liability, and seeks the remedies provided under § 1132(g)(2). See Bay Area Laundry, 522 U.S. at 197-98; Lads Trucking Co. v. Board of Trustees, 777 F.2d 1371, 1375 (9th Cir. 1985).

Additionally, it is important to note that § 1399 and § 1451 are parts of a 1980 amendment to ERISA known as the Multiemployer Pension Plan Amendments Act ("MPPAA"). See CMSH Co. v. Carpenters Trust Fund, 963 F.2d 238, 239 (9th Cir. 1992). The MPPAA sets mandatory liability on employers who withdraw from an established pension plan. See id. Of particular note, "[i]n the event of a dispute over employer withdrawal liability, the MPPAA mandates arbitration proceedings." Id. (citing 29 U.S.C. § 1401(a))[2]; see Carpenters Pension Trust Fund v. Moxley, 734 F.3d 864, 870 (9th Cir. 2013).

As The Board correctly notes, the Ninth Circuit has held that a plan participant or beneficiary is not entitled to a jury trial on ERISA claims because ERISA only provides a plan participant or beneficiary with equitable relief. See Thomas v. Oregon Fruit Prods. Co., 228 F.3d 991, 997 (9th Cir. 2000); see also Spinelli v. Gaughan, 12 F.2d 853, 858 (9th Cir. 1993). However, *Thomas* and *Spinelli* are not directly on point. *Thomas* and *Spinelli* both dealt with individual plan participants, not a plan fiduciary, and relief was sought through a provisions of ERISA that is inapplicable to the case at bar (29 U.S.C. § 1132(a)).

Nevertheless, the Ninth Circuit and other circuits have addressed the MPPAA. In *Board of Trs. of W. Conference of Teamsters Pension Trust Fund v. Thompson Bldg. Materials, Inc.*, 749 F.2d 1396, 1399 (9th 1984), the plan administrator attempted to recover withdrawal liability payments from an employer, as well as interest, liquidated damages, and costs. The employer raised several arguments on appeal, including the argument that the MPPAAA's mandatory arbitration provision (29 U.S.C. § 1401) violated the Seventh Amendment right to trial by jury. See id. 1404. The Ninth Circuit rejected the employer's Seventh Amendment challenge. See id. at 1404-05. In pertinent part, the Ninth Circuit explained: "The Seventh Amendment, however,

---

[2] In pertinent part, § 1401(a) provides: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C. §§ 1381-1399] shall be resolved through arbitration. Either party may initiate the arbitration proceeding . . . ." 29 U.S.C. § 1401(a)(1).

grants a right to trial by jury only in actions known to the common law. The Fund's cause of action under the MPPAA never existed under common law. Congress may delegate fact-finding functions to non-jury bodies in cases involving newly created statutory rights." Id. at 1404.

Other courts, while not necessarily using the precise language of the Ninth Circuit, have also concluded that jury trials are not part of the MPPAA. See Central States, Se. & Sw. Areas Pension Fund v. CLP Venture LLC, 760 F.3d 745, 750 (7th Cir. 2014); McDougall v. Pioneer Ranch Ltd., 494 F.3d 571, 576 (7th Cir. 2007); Connors v. Ryan's Coal Co., 923 F.2d 1461, 1465-66 (11th Cir. 1991); Keith Fulton & Sons, Inc. v. New England Teamsters & Trucking Indus. Pension Fund, 762 F.2d 1124, 1132 (1st Cir. 1984); Terson Co. v. Bakery Drivers & Salesmen Local 194, 739 F.2d 118, 121 (3d Cir. 1984); Washington Star Co. v. International Typographical Union Negotiated Pension Plan, 729 F.2d 1502, 1511 (D.C. Cir. 1984); Textile Workers Pension Fund v. Standard Dye & Finishing Co., 725 F.2d 843, 855 (2d Cir. 1984). Relying on *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442 (1977), these courts generally agree that the MPPAA does not violate the Seventh Amendment because the MPPAA established detailed procedures, remedies, and causes of action that are unknown to the common law, and the rights created by the MPPAA are "public rights," not private. See McDougall, 494 F.3d at 576; Connors, 923 F.2d at 1465-66; Keith Fulton, 762 F.2d at 1132; Terson Co., 739 F.2d at 121; Washington Star, 729 F.2d at 1511; Textile Workers, 725 F.2d at 855. Additionally, the Seventh Circuit has noted the MPPAA arbitration requirement of § 1401. See McDougall, 494 F.3d at 576.[3] According to the Seventh Circuit, if an employer follows the MPPAA's arbitration requirement, the employer is not entitled to a jury. See id. "It is anomalous to allow the defendants to have a jury trial simply because they avoided the dispute resolution scheme that Congress contemplated in the statute." Id. These Circuits therefore agree that "there is no right to a jury trial in an MPPAA withdrawal liability action—no provision in the MPPAA or the Seventh Amendment provides for one." Central States, 760 F.3d at 750.

---

[3] The Court notes that the First Circuit has indicated that when a pension fund is a trust, proceedings regarding withdrawal liability may arguably be "equitable" in nature because proceedings involving trust administration are traditionally considered "equitable." See Keith Fulton, 762 F.2d at 1132. As the ERISA plan at issue in this case appears to be a trust fund, the proceedings against Giumarra may be equitable. See id. However, because no party has cited to *Keith Fulton* or argued that the proceedings are equitable, the Court need not address the issue further.

Giumarra has presented no authority that directly addresses the availability of jury trials under the MPPAA in general or § 1451 in particular. In contrast, *Thompson Bldg.*, *Central States*, *McDougall*, *Connors*, *Keith Fulton*, *Terson Co.*, *Washington Star*, and *Textile Workers* all address the MPPAA, and these cases indicate that there is no Seventh Amendment right to a jury trial. The Court will follow those decisions and strike Giumarra's request for a jury trial. See Central States, 760 F.3d at 750; McDougall, 494 F.3d at 576; Connors, 923 F.2d at 1465-66; Keith Fulton, 762 F.2d at 1132; Terson Co., 739 F.2d at 121; Washington Star, 729 F.2d at 1511; Textile Workers, 725 F.2d at 855.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to strike (Doc. No. 16) is GRANTED; and
2. Defendants' request for a jury trial in their First Amended Answer (Doc. No. 17) is STRICKEN.

IT IS SO ORDERED.

Dated:   December 7, 2017

SENIOR DISTRICT JUDGE