# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE CALIFORNIA WINERY WORKERS' PENSION TRUST FUND,<br><br>Plaintiff,<br><br>v.<br><br>GIUMARRA VINEYARDS, et al,<br><br>Defendants. | Case No. 1:17-cv-00364-SAB<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND VACATING MARCH 7, 2018 HEARING<br><br>(ECF Nos. 30, 31, 32, 33, 34, 35, 36) |

On March 10, 2017, Plaintiff Board of Trustees of the California Winery Workers' Pension Trust Fund ("Plaintiff" or "the Fund") filed this action. Currently before the Court is Defendants' motion for summary judgment.

The Court, having reviewed the record, finds this matter suitable for decision without oral argument. <u>See</u> Local Rule 230(g). Accordingly, the previously scheduled hearing set on March 7, 2018, will be vacated and the parties will not be required to appear at that time.

## I.

## PROCEDURAL HISTORY

Plaintiff filed a complaint in this action on March 10, 2017, against Giumarra Vineyards. (ECF No. 1.) On May 9, 2017, Plaintiff filed a first amended complaint against Giumarra Vineyards Corporation ("GVC"); Arra Sales Corporation; Giumarra & Associates Beverage

1

1 | Company, LLC; Giumarra International Marketing; Giumarra Farms, Inc.; Giumarra Brothers Fruit, LLC; Giumarra Brothers Ranches, LLC; Giumarra Investments, LLC; Giumarra International Distributing; Giumarra Properties Corporation; Giumarra Equipment Leasing, LLC; Dana Point Marina Corporation; Giumarra Bros. Fruit Co., Inc.; Giumarra International Berry LLC; Giumarra Agricom International, LLC; and Giumarra/VBM International Berry, LLC ("Defendants") alleging violations under the Employee Retirement Income Security Act ("ERISA") for defaulted withdrawal liability under the multiemployer pension plan amendments act provisions. (ECF No. 6.) Defendants filed an answer on July 11, 2017. (ECF No. 15.) Plaintiff filed a motion to strike Defendants' demand for a jury trial on July 20, 2017. (ECF No. 16.) Defendants filed an amended answer on July 17, 2017. (ECF No. 17.)

Defendants filed an opposition to the motion to strike on August 14, 2017. (ECF No. 19.) Plaintiff filed a reply on August 21, 2017. (ECF No. 22.) On December 8, 2017, District Judge Anthony W. Ishii issued an order granting Plaintiff's motion to strike and Defendants' request for a jury trial was stricken. (ECF No. 27.) The parties had consented to the jurisdiction of the magistrate judge on December 5, 2017, and this matter was reassigned to the undersigned. (ECF Nos. 26, 27.)

On February 7, 2018, Defendants filed a motion for summary judgment. (ECF No. 30.) Plaintiff filed an opposition, response, and objections on February 21, 2018. (ECF Nos. 31, 32, 33.) Plaintiff filed a reply and objections on February 28, 2018. (ECF Nos. 34, 35, 36.)

**II.**

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## III.

## UNDISPUTED FACTS

Pursuant to a collective bargaining agreement, GVC participated in the California Winery Workers' Pension Plan for the benefit of its employees. (First Am. Compl. ¶ 12.) Effective June 1, 2008, GVC withdrew from the Fund by ceasing to make contributions to the Fund and there was a mass withdrawal of all employees at the end of 2008. (Depo. of John Giumarra, Jr.

("Giumarra Depo.") 23:15-25; Depo. of Sandra Kay Moore ("Moore Depo.") 46:1-25; January 28, 2010 Letter to Mr. John Giumarra, Jr. attached as Exhibit 14 to Moore Depo.) In September 2008, a letter was sent to Mr. Giumarra setting forth GVC's prorate share of the Fund and establishing an annual payment of $19,721 which was to be paid in quarterly payments of $4,930.25. (Moore Depo. 50:2-14; 51:4-52:11; February 3, 2009 Letter to Debbie Petito attached as Exhibit 10 to Moore Depo.) On March 10, 2009, the Fund sent a letter to Mr. Giumarra setting forth a payment schedule with quarterly payments due on March 9, June 9, September 9, and December 9 of each year. (March 10, 2009 Letter to Mr. John Giumarra Jr. attached as Exhibit 13 to Moore Depo.)

GVC missed the first quarterly payment of 2011. (Decl. of Kenneth A. Bowles ("Bowles Decl.") ¶ 20; Giumarra Depo. 53:9-56:14.) On June 6, 2011, the Funds' attorney contacted GVC's counsel to inform her that GVC was in default due to nonpayment of the quarterly payment due on March 9, 2011. (Decl. of Deborah H. Petito ("Petito Decl.") ¶ 7.) On June 7, 2011, the Fund's attorney emailed a copy of a letter dated March 14, 2011 to GVC's attorney which notified GVC that it was in default due to the missed quarterly payment. (Id. ¶ 8.) The March 14, 2011 letter demanded that GVC pay $33,854,527.00 plus interest at 3.25 %. (March 14, 2011 Letter to John Giumarra, Jr., attached as Exhibit 18 to Moore Depo.) On June 8, 2011, the Fund received GVC's missed quarterly payment which also included the interest due. (California Winery Workers Pension Plan Trust Withdrawal Liability, Giumarra Vineyards, attached as Exhibit 15 to Moore Depo.) GVC has continued to make quarterly payments from June 2011 through December 2017 on time. (Id.) The Fund has accepted these payments. (Id.)

## IV.

## EVIDENTIARY OBJECTIONS

Plaintiff objects to deposition transcripts and declarations submitted in support of Defendants' motion for summary judgment on the grounds of relevance, materiality, lack of foundation, hearsay, best evidence rule, argumentative, and speculation. Defendants object to deposition testimony on the ground that it lacks foundation. The Court addresses those objections before resolving the motion for summary judgment.

**A. Relevance, Immateriality, Speculation, or Argumentative**

Objections as to relevance, immateriality, speculation, or argumentative are inapplicable at the summary judgment stage. These objections are duplicative of the summary judgment standard itself. Burch v. Regents of Univ. of California, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006). The "court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant." Burch, 433 F.Supp.2d at 1119. Instead of challenging the admissibility of the evidence, the opposing party should argue the sufficiency of the evidence rather than make such superfluous objections. Id.; Montoya v. Orange Cty. Sheriff's Dep't, 987 F.Supp.2d 981, 994 (C.D. Cal. 2013). To the extent that evidence is irrelevant, immaterial, speculative, or argumentative the Court will not consider it in deciding the motion for summary judgment.

**B. Lack of Foundation**

Plaintiff objects to portions of the declaration of Kenneth A. Bowles on the ground that it lacks foundation. Defendants object to portions of John Giumarra, Jr.'s deposition testimony and Sandra Kay Moore's deposition testimony on lack of foundation.

Rule 56 requires that, before evidence can be considered on summary judgment, a proper foundation must be laid. Bias v. Moynihan, 508 F.3d 1212, 1224 (9th Cir. 2007). Affidavits or declarations used in support of or opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

1. <u>Kenneth A. Bowles Deposition Testimony</u>

Here, Mr. Bowles asserts that he has been employed by GVC for the past 27 years. (Decl. of Kenneth A. Bowles ¶ 2.) Mr. Bowles worked as an assistant controller from November 1990 until he became the controller in February 2010. (Id.) As controller of GVC, Mr. Bowles oversees the Accounting Department which includes oversight of the mailroom. (Id. at ¶ 5.) When the individual responsible for sorting mail or another staff person is not available, Mr. Bowles will sort the mail. (Id. at ¶ 9.)

Plaintiff objects to paragraph 4 in which Mr. Bowles describes GVC. However, Mr.

Bowles has worked for GVC for 27 years and in the position of controller for the last 8 years. Mr. Bowles has set forth sufficient information to establish his competence to testify to the information contained herein. The objection on lack of foundation is overruled.

Plaintiff objects to paragraphs 8 and 9 of Mr. Bowles declaration which sets forth the procedures used in the mailroom to sort and distribute mail. However, Mr. Bowles has established personal knowledge based on his oversight of the mailroom and personal involvement in the mail distribution process when other individuals are not available to distribute the mail. The objection on lack of foundation is overruled.

Plaintiff also objects to paragraph 20 of the declaration in which Mr. Bowles asserts that he is familiar with the reason for the late payment in March 2011. Mr. Bowles states that he reviewed the entries in the accounts payable software program and determined that the payments were mistakenly not scheduled for 2011 which resulted in the payment not being made when due. Based on Mr. Bowles position as controller, oversight of the Accounting Department, and review of the relevant software programming, a sufficient foundation has been laid that Mr. Bowles has personal knowledge and is competent to testify on the matter. The objection on lack of foundation is overruled.

2. John Giumarra, Jr. Deposition Testimony

Defendants object to Mr. Giumarra's deposition testimony that Kimber Christenson[1] did not have any role in respect to his daily mail because he testified that he was only generally aware of the mail procedures.

Mr. Giumarra testified that he was generally aware of the mail procedures at GVC and Ken Bowles was in charge of overseeing the mailroom. (Giumarra Depo. 46:3-10.) Mr. Giumarra testified that his mail would be looked at by Ken Bowles who would place a rubber band around it and then it would be taken to the sales office and placed in his inbox where he would retrieve it. (Giumarra Depo. 47:11-48:12.) Mr. Giumarra stated that he opened his own mail and that his secretary did not have any role because he picked it up out of the mail tray.

---

[1] Identified in deposition testimony as Kimberly Christianson.

(Giumarra Depo. 48:13-49:7.)

Based upon Mr. Giumarra's testimony, he was not aware of how the mail came to be placed in his inbox.

> Q   And then Ken Bowles would get your mail, tie a rubber band around it and send it over to the sales department?
> A   Yes.
> Q   And then it would find it way - - your mail would find its way into an inbox for all intents and purposes.
> A   Yes.
> Q   Okay. And then who would open your mail?
> A   I would.

(Giumarra Depo. 48:5-17.) Mr. Giumarra's testimony demonstrates that his general awareness of GVC's mail procedures is limited and he lacks knowledge regarding how mail makes its way from the mailroom to his inbox. Accordingly, Defendants' objection on lack of foundation is sustained.

### 3. Susan Moore Deposition Testimony

Defendants object to Ms. Moore's testimony regarding the mailing of the delinquency letter. First, Defendants' object to Ms. Moore's testimony that she sent the letter out by regular first class mail on the ground that she testified that she had no recollection of sending the letter. However, as shall be discussed further infra, Ms. Moore testified as to the specific business practices that she used in mailing such letters. (Moore Depo. 91:12-92:8, 98:5-21, 101:8-25; Cont. Moore Depo. 191:5-197:2.) This is sufficient to lay a foundation that the letter was mailed according to her usual business practice. The fact that Ms. Moore has no recollection of mailing the letter goes to the weight of the testimony, not its admissibility. Defendants' objection to Ms. Moore's testimony that the letter was mailed by first class mail is overruled.

Defendants also object to Ms. Moore's testimony that she had recollection of signing the letter. As Ms. Moore immediately corrected her response and stated that she did not actually remember signing the letter, Defendants' objection is sustained.

**C.   Hearsay**

Plaintiff objects to portions of the declaration of Kenneth A. Bowles on the grounds of hearsay. Hearsay is inadmissible on summary judgment, as is testimony not based on the

1  declarant's personal knowledge of the events detailed in the declaration.  Kim v. United States,
2  121 F.3d 1269, 1276 (9th Cir. 1997).

3  Plaintiff objects to paragraphs 9, 12, 16, 19, and 20 on the grounds of hearsay.  Plaintiff's
4  objection to paragraphs 9, 12, 19, and 20 is overruled as for the reasons discussed supra at IV.B.
5  as this testimony is found to be based on Mr. Bowles personal knowledge and is not hearsay.

6  Plaintiff's objection to paragraph 16 is sustained to the extent that this evidence is offered
7  for the truth of the matter.  However, the Court notes that statements do not qualify as hearsay
8  when they "are not offered for the truth of the matter asserted, but [a]re admitted to establish that
9  the statement was made or to demonstrate the effect the statement had on the hearer." Montoya,
10 987 F.Supp.2d at 993.  Therefore, the purpose for the introduction of the evidence will determine
11 its admissibility.

### D. Best Evidence Rule

13 Plaintiff objects to portions of the declarations of Kenneth A. Bowles and Deborah H.
14 Petito on the grounds that they violate the best evidence rule and the documents should speak for
15 themselves.  Rule 1002 of the Federal Rules of Civil Procedure requires that "[a]n original
16 writing, recording, or photograph is required in order to prove its content unless these rules or a
17 federal statute provides otherwise."  The rule is applicable only when one seeks to prove the
18 contents of documents or a recording.  United States v. Gonzales-Benitez, 537 F.2d 1051, 1053
19 (9th Cir. 1976).

20     1.    <u>Declaration of Kenneth A. Bowles</u>

21 Plaintiff objects to paragraph 9 of Mr. Bowles declaration on the grounds that it violates
22 the best evidence rule, however, this paragraph addresses the mailroom procedures at GVC and
23 the best evidence rule is inapplicable to the testimony as it is not seeking to prove the contents of
24 a document.  Gonzales-Benitez, 537 F.2d at 1053.  Plaintiff's objection to Mr. Bowles testimony
25 on the ground of the best evidence rule is overruled.

26     2.    <u>Declaration of Deborah H. Petito</u>

27 Plaintiff objects to paragraphs 4 and 5 of Deborah Petito's declaration on the grounds that
28 the testimony violates the best evidence rule as to the date of the letter.  However, the paragraphs

1 at issue state when Ms. Petito received the letters, therefore the statements are not seeking to
2 prove the contents of the letter. Plaintiff's objection is overruled.

## V.

## ANALYSIS

Pursuant to ERISA "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). As relevant here, default under the statute is defined as "the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure. . . ." 29 U.S.C. § 1399(c)(5)(A).

The issue presented in the current motion is when Defendant GVC first received notice of the default. Defendants move for summary judgment on the grounds that the mail box rule should not apply as Plaintiff has no evidence that the March 14, 2011 delinquency letter was actually mailed to Defendant Giumarra. Further, Defendants argue that if the mailbox rule is found to apply, they have presented sufficient evidence to defeat the presumption of receipt of the letter that would arise under the rule.

Plaintiff counters that it has presented sufficient evidence that the letter was mailed in order for the presumption under the mailbox rule to apply. Plaintiff argues that whether the letter was actually received is a disputed issue of material fact that precludes summary judgment.

Defendants respond that there is no evidence of mailing and Mr. Giumarra has presented unrebutted evidence that he did not receive the letter. Defendant contends that since the evidence of nonreceipt is unrefuted there is no genuine issue of material fact to preclude entry of summary judgment.

Under the common law mailbox rule, proper and timely mailing a document raises a rebuttable presumption that the addressee has timely received the document. <u>Hagner v. United States</u>, 285 U.S. 427, 430 (1932); <u>Lewis v. United States</u>, 144 F.3d 1220, 1222 (9th Cir. 1998). "The rule is well settled that if a letter properly directed is proved to have been either put into the

post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." Rosenthal v. Walker, 111 U.S. 185, 193 (1884). The rule is a tool to be used when direct evidence of either receipt or non-receipt is not available. Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 962 (9th Cir. 2001). The factfinder must determine whether the sender has presented sufficient evidence of mailing to invoke the presumption of receipt, and if so, whether the intended recipient has presented sufficient evidence of non-receipt to rebut the presumption. Schikore, 269 F.3d at 963. The Ninth Circuit has determined that the mailbox rule applies to ERISA cases where receipt is a factual issue in dispute. Id.

In Schikore the appellate court found that under the mailbox rule a document will be presumed to have been received once evidence of mailing is produced unless the intended recipient can produce probative evidence of non-receipt. 269 F.3d at 964. At the very least, this requires the intended recipient "to describe in detail its procedures for receiving, sorting, and distributing mail, to show that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service, to provide evidence that it has conducted a thorough search for the document at the addressee's physical facility, and to establish that had the document been received around the time the claimant asserted it was mailed, it would presently be at the location searched by the [intended recipient]." Id. Merely stating that the document cannot be found in the addressee's files or records is insufficient to defeat the presumption. Huizar v. Carey, 273 F.3d 1220, 1223 n.3 (9th Cir. 2001).

**A.     Plaintiff Has Submitted Sufficient Evidence to Invoke the Mailbox Rule**

Here, Defendants argue that Plaintiff has not produced sufficient evidence of mailing to invoke the mailbox rule; and therefore, as a matter of law the mailbox rule does not apply. First, Defendants contend that Plaintiff has no admissible evidence that the delinquency letter was mailed in March 2011.

"Placing letters in the mail may be proved by circumstantial evidence, including customary mailing practices used in the sender's business." Turner v. Dep't of Educ. Hawaii,

855 F.Supp.2d 1155, 1167 (D. Haw. 2012), aff'd sub nom. Turner v. Hawaii Dep't of Educ., 539 F.App'x 731 (9th Cir. 2013) (citing Custer v. Murphy Oil USA, Inc., 503 F.3d 415, 420 (5th Cir.2007); Lewis, 144 F.3d at 1222–23). In Turner, the district court found that the submission of the case log documenting that a letter was mailed which was corroborated through a declaration by another individual that had received a copy of the letter was sufficient to raise a presumption of mailing. Turner, 855 F.Supp.2d at 1168.

Similarly, in Mahon v. Credit Bureau of Placer Cty. Inc., 171 F.3d 1197 (9th Cir. 1999), as amended on denial of reh'g and reh'g en banc (Apr. 28, 1999), the defendant presented evidence that as part of its regular course of business a standardized collection letter had been printed and, in accord with standard practice, mailed to the plaintiffs. Mahon, 171 F.3d at 1199. Two other letters were also generated that were mailed to the plaintiffs' home address. Id. The Ninth Circuit found that the evidence of the defendant's standard business practice established that a notice had been mailed to the plaintiffs. Id. at 1201.

Here, Ms. Moore testified that she sent the March 9, 2011 delinquency letter out by regular first class mail. (Moore Depo. 91:12-24.) One of her staff members would probably have created the letter, made the appropriate copies for their file and legal counsel, and given it to her for review and signature. (Id. 92:2-6.) Ms. Moore would have signed the letter and placed it in the envelope. (Id. 92:5-6.) A copy of the letter would not be placed in the file unless Ms. Moore signed and mailed the original. (Id. 92:13-15.) She does not have a specific recollection of signing this letter. (Id. 92:17-18.)

After receiving the file with the original letter and two copies, Ms. Moore would have signed the original and placed it in an envelope to Mr. Giumarra, placed the attorney's copy in the envelope to Raphael Shannon and placed the letters in the outgoing mail bin for the mail person to pick up. (Id. 98:9-13.) Although she has no specific recollection of doing so in this instance, she always follows this process and she has no recollection of ever not following this process. (Id. 98:18-21.) The letter was marked received on March 16, 2011, by McCarthy, Johnson & Miller, Ms. Shannon's law firm. (Exhibit 70 attached to Depo. of Paul Eric Schad.)

Ms. Moore testified that after it was determined that the quarterly payment was not made

a letter would have been sent to Mr. Giumarra. (Cont. Depo. of Moore 190:13-191:4.) There was a template of the letter and the information regarding the specific employer would be inserted by herself or Monique Porras. (Id. 191:6-14.) After being generated, the letter and envelope would be sent to the printer on her desk. (Id. 191:19-192:6, 192:18-25.) Ms. Moore signs the letter, the original is placed in the envelope, and placed in the outgoing mail tray. (Id. 192:14-17.) The letter would be sent to the address of record for the employer. (Id. 193:8-194:10.) Although she does not specifically remember doing so, Ms. Moore would generally be the person to fold the letter, place it in the envelope, seal the envelope, and place it in the outgoing mail bin. (Id. 194:17-195:2.) The outgoing mail bin is a wire basket that is outside her office in which all outgoing mail from her department is placed. (Id. 195:6-21.)

The mail clerks pick the mail up two or three times per day, with the last pick-up usually about 3:30. (Cont. Depo. of Moore 195:22-25; Depo. of Richard Moore 36:9-12; Depo. of Alicia Quintanilla 44:20-45:2, 52:20-22.) The mail is taken to the mail room where it is separated by departments and accounts. (Depo. of Richard Moore 36:11-13.) The mail is run through the mail meter by departments, placed in a tray, and is picked up in the late afternoon by the mail carrier. (Id. 36:21-22:3; Depo. of Alicia Quintanilla 51:24-52:5.)

All of the company's mail is sent return service requested so if there is a forwarding address or it is undeliverable it will be returned to them. (Cont. Depo. of Moore 199:1-11.) The letter sent to Mr. Giumarra was not returned. (Id. 200:10-12.)

Defendants argue that in a case similar to this, Telerico v. Nationwide Mut. Fire Ins. Co., 529 F. App'x 729 (6th Cir. 2013) (unpublished), the Sixth Circuit found there was insufficient evidence of mailing to invoke the presumption of receipt under the mailbox rule. In Telerico, the plaintiff testified that he mailed a letter containing the proof of loss to his insurance company, but could not recall any details regarding how and where it was mailed. 529 F.App'x at 732. However, he testified that if he signed the proof of loss he would have mailed it. Id. The Sixth Circuit found that "[t]he most natural interpretation of Telerico's statement is that he assumed he had mailed it given the existence of a signed and notarized copy. . . ." Id. Since the plaintiffs had not shown that they had properly deposited the proof of loss in the mail, the presumption

under the mailbox rule was inapplicable. Id.

Here, Ms. Moore testified to the process by which the letter was created. She stated that after signing the letter, she would have placed a copy to Mr. Giumarra and a copy to the attorney, Raphael Shannon, in the outgoing mail. The mail would have been picked up and processed by the mailroom clerks. She further testified that the letter would not have been filed unless she had signed and mailed it, and that no letter was returned as undeliverable.

While the plaintiff in Telerico could not recall any details regarding how and where the document was mailed, 529 F.App'x at 732, here, Ms. Moore testified as to her regular business practice in mailing such letters. This included placing the letter in the file only after it was signed and mailed. The fact that the letter was found in the file is corroborating evidence that the letter was placed in the mail. Plaintiff has provided circumstantial evidence as to how and where the letter was mailed. Defendant's arguments regarding the lack of direct evidence of mailing or receipt goes to the weight of the evidence, not to admissibility.

Additionally, while Defendant argues that courts have permitted a party to invoke the mailbox rule only where there is concrete evidence of mailing, Plaintiff has presented a copy of the letter mailed to Ms. Shannon which was date stamped received. Defendants contend that it is immaterial whether Ms. Shannon received the letter. While the letter to Ms. Shannon is not direct evidence that a letter was mailed to Mr. Giumarra, considering Ms. Moore's testimony regarding her customary business practices, it is circumstantial evidence that the letter was placed in the mail. Based on the procedures described by Ms. Moore, both letters would have been placed in the mail at the same time. Unlike the plaintiff in Telerico, Plaintiff has submitted circumstantial evidence that the letter was actually mailed.

The Court finds that Plaintiff has submitted sufficient evidence to invoke the presumption of mailing.

**B.     A Genuine Dispute of Material Fact Exists as to Receipt of the Letter**

Alternately, Defendants contend that if there is sufficient evidence of mailing to apply the mailbox rule, they have submitted evidence to overcome the presumption of receipt leaving only the evidence of non-receipt. Plaintiff responds that there is a disputed issue of material fact as to

whether the letter was received that cannot be decided on summary judgment.

Courts find that a strong presumption of receipt applies where notice is sent by certified mail because it creates actual evidence of delivery in the form of a receipt. Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 319 (3d Cir. 2014). However, the presumption is weaker where delivery is sent by regular mail which generates no receipt or other proof of delivery. Lupyan, 761 F.3d at 319. Although Plaintiff has presented circumstantial evidence that the letter was mailed, there is no corroborating evidence that the March 14, 2011 letter was actually received by Mr. Giumarra. Therefore, under the mailbox rule the presumption of delivery is weak.

Defendants argue that Mr. Giumarra's denial that he received the letter is sufficient by itself to rebut the presumption of delivery. Defendants cite to Nunley v. City of Los Angeles, 52 F.3d 792 (9th Cir. 1995), in support of this proposition. In Nunley, the Ninth Circuit held that a specific factual denial of receipt by the addressee was sufficient to rebut the presumption of receipt of a motion for an extension of time to file an appeal under Rule 4(a)(6) of the Federal Rules of Appellate Procedure. 52 F.3d at 792-93. However, courts have found that "the rule articulated in Nunley does not apply beyond its procedural and factual setting." Chavez v. Bank of Am., No. C 10-653 JCS, 2011 WL 4712204, at *6 (N.D. Cal. Oct. 7, 2011).

In Schikore, the Ninth Circuit found that to rebut the presumption of delivery in an ERISA action the intended recipient must submit adequate evidence which at the very least, requires the intended recipient "to describe in detail its procedures for receiving, sorting, and distributing mail, to show that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service, to provide evidence that it has conducted a thorough search for the document at the addressee's physical facility, and to establish that had the document been received around the time the [sender] asserted it was mailed, it would presently be at the location searched." Schikore, 269 F.3d at 964.

Courts recognize that properly mailing a document does not necessarily mean that it was received, Lupyan, 761 F.3d at 322 ("there has never been a claim that the postal service has obtained perfection or that it is infallible"); and that the fact that the document cannot currently

be found in the records of the intended recipient does not mean it was not received; see Jones v. United States, 226 F.2d 24, 27 (9th Cir. 1955) ("It is notorious that returns and other papers have in the past been mislaid or lost in the offices of many collectors.").

Defendants argue that the Funds conduct before and after March 2011 is evidence of non-receipt pointing to the fact that the letter was not sent by certified mail, there was no delivery confirmation, the Defendants' attorney was not given any notice as she had received previously, and the Fund did not make a phone call or e-mail to Defendants of the missed payment. Defendants also contend that Plaintiff has now changed its practice and mails all delinquency letters by certified mail which demonstrates that the fund could have created evidence that the letter was received by Mr. Giumarra. However, the fact that the Fund could have mailed the letter by certified mail, contacted counsel, or sent an email does not demonstrate that the letter was not mailed or that it was not received. The Court finds that none of this is probative evidence as to the current issue, whether the letter was actually received by Mr. Giumarra.

Defendant GVC proffers evidence of the mailroom procedures at their Bakersfield Office. The March 14, 2011 delinquency letter was mailed to John Giumarra, Jr., Giumarra Vineyards, P.O. Bin 1969, Bakersfield, California 93303. (ECF No. 30-3 at 112-113.) This is the same address that Defendant GVC has used for the past 27 years for customers to send their checks and suppliers to send their invoices. (Decl. of Kenneth A Bowles ¶ 6.)

Each business day in 2011 at approximately 10:00 a.m., Stephane Hilligross, Glenda Harris, or another employee from the accounting department would be sent to the post office to pick up the mail bin. (Id. ¶ 8.) All mail in the bin would be transferred to a large plastic box maintained for this purpose and transported back to Defendant GVC's office and given to Lolita Belo to be sorted for internal delivery. (Id. ¶ 9.) If Ms. Belo was unavailable, another staff person, Mr. Bowles, or Mr. Giumarra would sort the mail. (Id.) Each day, every envelope in the plastic box would be reviewed to determine to whom it was addressed and placed unopened in the mail slot for the person or department in the mailroom. (Id. ¶¶ 9, 10.)

Mr. Giumarra worked in the sales department and his office was located at the corporate office at 11220 Edison Highway, Bakersfield, California. (Id. ¶ 11.) His mail would be placed

with other mail for the sales department. (Id.) After the mail was sorted it would be picked up by a staff member to be delivered to the addressee. (Id. ¶ 13.) Mail for the sales department would be picked up by Kimber Christenson, or another sales department staff member. (Id.) Once it arrived at the sales department, all mail would be sorted by Ms. Christenson. (Id. ¶ 11) Ms. Christenson was the receptionist for the sales department and also acted as Mr. Giumarra's assistant. (Id.)

After hearing that Plaintiff claimed to have sent the delinquency letter on March 14, 2011, Mr. Bowles personally directed an office wide search for the letter. (Id. ¶ 18.) Mr. Bowles took part searching the GVC mailroom and his office. (Id.) Mr. Bowles personally observed Molly Elliott, a former Accounts Payable Supervisor, searching her file cabinets and desk for the letter. (Id.) After a search that lasted approximately one week, the letter was not found. (Id.)

Mr. Giumarra also personally searched his office and his secretary's desk for the letter. (Giumarra Depo. at 37:3-38:4.) Mr. Giumarra testified that he had never seen the March 14, 2011 letter until June of 2011 when Ms. Petito provided him with a copy. (Id. at 36:17-25.) Further, upon receiving notice of the delinquency in June 2011, the payment was mailed and Plaintiff received the payment approximately two days later. (Petito Decl. ¶ 7; California Winery Workers Pension Plan Trust Withdrawal Liability, Giumarra Vineyards, attached as Exhibit 15 to Moore Depo.)

In Nunley, the Ninth Circuit discussed that when a movant specifically denies receipt of notice, even after the presumption is rebutted, "the factual question of receipt remains and may be decided in favor of receipt by a fact finder who may choose to draw inferences of receipt from the evidence of mailing, in spite of contrary evidence." 52 F.3d at 796 (citing In re Yoder, 758 F.2d 1114, 1119 (6th Cir.1985)). Similarly the Fifth Circuit found that where the recipient's "assertion of non-receipt is supported by circumstantial evidence, and the [sender] provides an equally weak assertion that notice was mailed, the issue of mailing should not be decided at summary judgment." Custer, 503 F.3d at 422; see also Lupyan, 761 F.3d at 322 (receipt of

1  denial is enough to create a genuine issue of material fact that must be resolved by a factfinder).[2]

2  Accordingly, the Court need not decide whether the evidence presented is sufficient to
3  rebut the mailbox rule presumption. Heydarian v. Agilent Techs., Inc., No.
4  CIVS062234LKKKJM, 2008 WL 162166, at *5 (E.D. Cal. Jan. 17, 2008) (even if the
5  presumption is rebutted a genuine dispute exists as to whether the appeal was actually received
6  and summary judgment would be denied on that basis). Defendant GVC contends that the
7  March 14, 2011 letter was not received until June 2011, but where the recipient presents
8  evidence that the letter was not received, the opposing evidence must be weighed by the trier of
9  fact to determine whether or not the letter was received. Rosenthal, 111 U.S. at 194; see also
10 Anderson v. United States, 966 F.2d 487, 492 (9th Cir. 1992) (whether the mailbox presumption
11 is rebutted is in essence a credibility determination).

12 The factual dispute at issue here is whether the delinquency letter was placed in the mail
13 and, if so, whether it was received by Mr. Giumarra. Because resolving this dispute involves
14 determining the credibility of the witnesses and evidence presented, the Court finds that
15 summary judgment is not the appropriate manner to decide the issue. The Court will need to
16 hear witness testimony and consider the parties presentation of evidence at trial to weigh the
17 evidence to determine whether or not the letter was received.

18 Defendants have not met their burden of demonstrating that there are no genuine issues of
19 material fact. Viewing the facts in the light most favorable to the nonmoving party, a genuine

---

[2] Defendants rely on Pondexter v. Allegheny Cty. Hous. Auth., No. CIV.A. 11-857, 2012 WL 3611225 (W.D. Pa. Aug. 21, 2012), to support their argument that summary judgment is appropriate in this instance. While the Pondexter court did discuss the mailbox rule and whether the plaintiff had submitted an application for housing assistance, the claim at issue was discrimination under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; Fair Housing Act, 42 U.S.C. § 3601, et seq.; Rehabilitation Act, 29 U.S.C. § 794, and Americans with Disabilities Act, 42 U.S.C. 12101, et seq. Pondexter, 2012 WL 3611225 at *5. The material fact was not whether the plaintiff had submitted an application for housing benefits, but whether the plaintiff was denied benefits. The Pondexter court found that the plaintiff had not submitted any evidence that he had been denied housing benefits. Id. Since the plaintiff had not demonstrated that he had been denied benefits there was no genuine dispute of fact that he had been discriminated against. Id.

The Court finds Pondexter to be distinguishable from the instant case. Here, whether the notice itself was received in March 2011 is a material fact. Defendants were required to cure the deficiency within 60 days after receiving written notification from the plan sponsor of the delinquency or the plan sponsor may require immediate payment of the outstanding amount of the employer's withdrawal liability. 29 U.S.C. § 1399(c)(5)(A). Therefore, the date upon which the defendants received notice is material to whether Plaintiff may require immediate payment of the amount outstanding.

issue of material fact exists as to when Mr. Giumarra received the March 14, 2011 delinquency letter and Defendants' motion for summary judgment is denied.

## VI.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that a genuine dispute of material fact exists as to when Defendants received notice of the delinquency.

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is denied. IT IS FURTHER ORDERED that the hearing set for March 7, 2018 is VACATED and the parties are not required to appear at that time.

IT IS SO ORDERED.

Dated: __**March 2, 2018**__

UNITED STATES MAGISTRATE JUDGE