# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE CALIFORNIA WINERY WORKERS' PENSION TRUST FUND,<br><br>Plaintiff,<br><br>v.<br><br>GIUMARRA VINEYARDS, and GIUMARRA INVESTMENT, LLC,<br><br>Defendants. | Case No. 1:17-cv-00364-SAB<br><br>MEMORANDUM DECISION |

**I.**

**INTRODUCTION**

This action concerns whether Defendant Giumarra Vineyards has defaulted on their quarterly withdrawal payments under the Employee Retirement Income Security Act ("ERISA"). The Board of Trustees of the California Winery Workers' Pension Trust Fund ("Plaintiff" or "the Plan") filed this action on March 10, 2017, against Giumarra Vineyards. On May 9, 2017, Plaintiff filed a first amended complaint against Giumarra Vineyards Corporation ("GVC"); Arra Sales Corporation; Giumarra & Associates Beverage Company, LLC; Giumarra International Marketing; Giumarra Farms, Inc.; Giumarra Brothers Fruit, LLC; Giumarra Brothers Ranches, LLC; Giumarra Investments, LLC; Giumarra International Distributing; Giumarra Properties Corporation; Giumarra Equipment Leasing, LLC; Dana Point Marina Corporation; Giumarra Bros. Fruit Co., Inc.; Giumarra International Berry LLC; Giumarra Agricom International, LLC;

1

and Giumarra/VBM International Berry, LLC alleging violations under ERISA for defaulted withdrawal liability under the multiemployer pension plan amendments act provisions. On July 6, 2018, all the named defendants were dismissed at the stipulation of the parties with the exception of GVC and Giumarra Investments, LLC ("Defendants").

A bench trial was held on September 12 and 13, 2018, before the undersigned. Plaintiff was represented by counsel Michael Korda. Defendants were represented by counsel Scott Page and Mark Casciari. Closing arguments were heard on September 13, 2018. Having considered the testimony of the witnesses and those exhibits that were admitted at trial, the Court, by this memorandum of decision, issues its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. For the reasons set for the below, the Court concludes that the evidence proves that Defendants are not in default on their quarterly payments.

## II.

## FINDINGS OF FACT

1. The Plan is a multiemployer pension plan governed by ERISA.
2. Plaintiff is a fiduciary and plan sponsor.
3. Defendant GVC is an employer within the meaning of ERISA.
4. Defendant Giumarra Investments, LLC is a controlled group member of Defendant GVC, and for purposes of this lawsuit, is therefore jointly and severally liable for the judgment, if any, in this action.
5. Defendant GVC's withdrawal from the Plan was effective June 1, 2008.
6. The total mass withdrawal liability assessed to Defendant GVC by the Plan is $33,854.527.00.
7. Following withdrawal from the Plan, Defendant GVC's quarterly payment was determined to be $4,930.25 with payments due on March 9, June 9, September 9, and December 9 of each year.
8. Defendant GVC did not make the March 9, 2011 payment when due.
9. On March 14, 2011, a letter was mailed to John Giumarra, Jr. notifying that the

1 | March 9, 2011 payment was not received.

2 | 10. No business records exist as to the mailing of the March 14, 2011 letter to John Giumarra, Jr.

4 | 11. The March 14, 2011 letter was received by the Office of Raphael Shannon on or about March 16, 2011.

6 | 12. John Giumarra, Jr. did not receive the letter mailed on March 14, 2011.

7 | 13. On June 6, 2011, Ms. Petito, GVC's counsel, received notice from Ms. Shannon, Plaintiff's counsel, that the March 9, 2011 payment was not received.

9 | 14. On this same date, Ms. Petito contacted GVC and informed them of the missed payment.

11 | 15. On June 6, 2011, checks were issued for the March 9, 2011 and June 9, 2011 quarterly payments.

13 | 16. On June 7, 2011, Ms. Petito received an email containing a copy of the March 14, 2011 letter which was forwarded to John Giumarra, Jr. and Kenneth Bowles.

15 | 17. The checks for the quarterly payments were mailed on June 7, 2011.

16 | 18. The checks were deposited by Plaintiff on June 8, 2011.

17 | 19. Defendant GVC conducted a search for the letter and it was not found.

18 | 20. On June 17, 2011, a check and letter explaining that it was for the interest due on the missed payment was mailed to Plaintiff.

20 | 21. The interest check was deposited by Plaintiff on June 20, 2011.

21 | 22. Defendant has made all payments on time other than first payment and the March 2011 payment.

### III.

### CONCLUSIONS OF LAW

Plaintiff brings this action for payment of the total outstanding defaulted withdrawal liability of $33,854,527.00, plus interest, liquidated damages, and attorney fees. Defendant GVC's withdrawal liability was assessed after the complete withdrawal from the Plan on July 1, 2008. Quarterly payments of $4,930.25 were due on March 9, June 9, September 9, and

December 9 of each year. Defendant GVC did not make the March 9, 2011 payment when it was due. Around March 14, 2011, a letter was mailed to Mr. Giumarra, Jr. notifying him that the March 9, 2011 payment had not been received and the company was in default.

Pursuant to 29 U.S.C. § 1399, "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Default occurs where the employer fails to make payments that are due and "the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure." 29 U.S.C. § 1399(c)(5)(A). Therefore, whether Defendant GVC is in default depends on the date that Mr. Giumarra, Jr. received the March 14, 2011 letter. At trial, Plaintiff argued that there was no evidence that Mr. Giumarra, Jr. did not receive the letter and Defendant argued that there is no evidence that the Plan actually mailed the letter to Mr. Giumarra, Jr. or that Mr. Giumarra, Jr. received the March 14, 2011 when it was originally mailed.

At the close of Plaintiff's case and at the close of evidence, Defendants moved for judgment under Rule 52(c). Under Rule 52(c), "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Defendants argue that Plaintiff did not present evidence that the March 14, 2011 letter was mailed to Mr. Giumarra, Jr. and seek entry of judgment in their favor.

During the trial of this matter, Plaintiff presented evidence by which the Court finds that the March 14, 2011 letter was mailed. Specifically, Ms. Moore, Mr. Moore, and Ms. Quintanilla testified to the mailing procedures used by the Fund. Ms. Moore would sign the original of the letter, and mail a copy of the letter to the employer and to the Fund's attorney, Ms. Shannon, and then file a copy of the letter. Ms. Moore testified that she found a copy of the March 14, 2011 letter in her files; and Ms. Shannon received her copy of the letter around March 16, 2011. Although circumstantial evidence, the fact that the letter was received by Ms. Shannon and a

copy of the letter was in the Plan's files is sufficient for the Court to find that the letter was also mailed to the employer. The Court finds that Plaintiff has presented evidence by which the Court finds that a letter was mailed to John Giumarra, Jr. on March 14, 2011.

The parties argue whether the mailbox rule presumption applies in an ERISA action. Under the common law mailbox rule, proper and timely mailing a document raises a rebuttable presumption that the addressee has timely received the document. Hagner v. United States, 285 U.S. 427, 430 (1932); Lewis v. United States, 144 F.3d 1220, 1222 (9th Cir. 1998). "The rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." Rosenthal v. Walker, 111 U.S. 185, 193 (1884). The rule is a tool to be used where, as here, direct evidence of either receipt or non-receipt is not available. Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 962 (9th Cir. 2001). The factfinder must determine whether the sender has presented sufficient evidence of mailing to invoke the presumption of receipt, and if so, whether the intended recipient has presented sufficient evidence of non-receipt to rebut the presumption. Schikore, 269 F.3d at 963. The Ninth Circuit has determined that the mailbox rule applies to ERISA cases where receipt is a factual issue in dispute. Id. Accordingly, Defendants' motion for judgment pursuant to Rule 52(c) is denied.

Courts find that a strong presumption of receipt applies where notice is sent by certified mail because it creates actual evidence of delivery in the form of a receipt. Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 319 (3d Cir. 2014). However, the presumption is weaker where delivery is sent by regular mail which generates no receipt or other proof of delivery. Lupyan, 761 F.3d at 319. Although Plaintiff has presented circumstantial evidence that the letter was mailed, there is no corroborating evidence that the March 14, 2011 letter was actually received by Mr. Giumarra, Jr. Therefore, under the mailbox rule the presumption of delivery is weak is this instance.

Courts also recognize that properly mailing a document does not necessarily mean that it was received, Lupyan, 761 F.3d at 322 ("there has never been a claim that the postal service has

obtained perfection or that it is infallible"); and that the fact that the document cannot currently be found in the records of the intended recipient does not mean it was not received; see Jones v. United States, 226 F.2d 24, 27 (9th Cir. 1955) ("It is notorious that returns and other papers have in the past been mislaid or lost in the offices of many collectors."). Therefore, the Court considers whether the testimony presented by Defendants was sufficient to rebut the presumption of receipt.

Based on the evidence presented at trial, the Court finds that Mr. Giumarra, Jr. did not receive the March 14, 2011 letter rebutting the presumption of delivery under the mailbox rule. Defendants presented evidence of the mail procedures in place at GVC. Mr. Bowles, GVC's Controller, testified to the companies' procedures for picking up mail at the post office and distributing it to the intended addressee. Mr. Bowles testified that he looked at the sorted mail to determine that it had been directed to the right department or individual prior to placing the mail in the appropriate mailbox. Mr. Giumarra Jr.'s mail was bundled together in a rubber band and picked up by an employee in the sales department. The mail was placed in Mr. Giumarra Jr.'s mail tray by the sales department receptionist.

The Court finds Mr. Giumarra Jr.'s testimony that he did not receive the letter to be credible. While evidence was presented that this was a family run business and employees and owners did things simply to get the job done which can be probative of a lack of uniform procedures, Mr. Giumarra, Jr. acted with a sense of corporate professionalism and the company maintained a certain way of doing things when it came to the receipt and distribution of the mail. Based upon his background, training, and experience, and his demeanor in Court, the Court finds that had he received the March 11, 2011 letter he would have taken care of the matter by seeing that payment was made forthwith with instructions that the letter be sent to GVC's counsel who handled these matters, Deborah Petito. The evidence showed that Mr. Guimarra, Jr. recognized his skill set and knew when matters needed to be taken care of by others. This would have been one of those matters he would have referred to Ms. Petito and he would have directed that GVC issue payment immediately.

The Court finds that it would have been inconsistent with Mr. Giumarra, Jr.'s practice to

have acted with indifference or to take his time in addressing the letter. It was apparent that he knew the consequences of the failure to timely pay the quarterly payment and the absolute detrimental effect that a failure to act would have on the family business, a withdraw liability in the millions of dollars. Additionally, there was no evidence presented that he was disorganized, had a propensity to lose things, or that his office was in such a state of disarray that nothing could be found there. Mr. Giumarra Jr.'s demeanor in court, his work for the company, and his experience suggests otherwise. Further, there was evidence presented that the company had the ability to pay such amounts when they were due and owing.

Testimony showed that Mr. Giumarra, Jr. picked up and opened his mail and did his own filing. Mr. Giumarra, Jr. was aware of the significant consequences of failing to make the quarterly payments and had he received the letter he would have acted upon it. This is demonstrated by the fact that as soon as he was informed of the default on June 6, 2011, he had a check issued the same day for the March and June payments. Further, Defendants presented testimony that the places where the letter was likely to be found were searched and no letter or unopened envelope was discovered. The Court finds that Plaintiff has failed to prove by a preponderance of the evidence that Mr. Giumarra, Jr. or anyone at GVC received the letter mailed on March 14, 2011.

The letter was received by Defendant GVC's counsel and forwarded to Mr. Giumarra, Jr. on June 7, 2011. The fund received the payment and it was deposited on June 8, 2011. The interest payment was mailed on June 17, 2011 and the fund deposited the payment on June 20, 2011. Therefore, Defendant GVC cured the failure to make the March 9, 2011 payment within 60 days after receiving written notification from the plan sponsor of the failure. 29 U.S.C. § 1399(c)(5)(A). The Court finds that Defendant GVC is not in default on their quarterly payment obligations.

## IV.

## CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of Defendants Giumarra Vineyards and Giumarra Investments, LLC and against Plaintiff Board of Trustees of the

7

California Winery Workers' Pension Trust Fund on Plaintiff's claim arising under ERISA for defaulted withdrawal liability under the multiemployer pension plan amendments act provisions The Clerk of the Court is directed to enter judgment for Giumarra Vineyards and Giumarra Investments, LLC and against Plaintiff Board of Trustees of the California Winery Workers' Pension Trust Fund and close this action.

IT IS SO ORDERED.

Dated: __**September 19, 2018**__

UNITED STATES MAGISTRATE JUDGE